UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL BENBENEK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.:  1:12-cv-0591-JMS-DML |
| | ) |
| FIDELITY NATIONAL PROPERTY AND | ) |
| CASUALTY INSURANCE COMPANY, | ) |
| TERRI PRYOR-YOUNG, FARM BUREAU | ) |
| INSURANCE COMPANY, and | ) |
| RURAL INSURANCE AGENCY, INC., | ) |
| | ) |
| Defendants. | ) |

## Order on Defendants' Motions for Leave
## to Assert Nonparty Defense (Dkts. 25 and 28)

This matter is before the court on a motion (Dkt. 25) by defendants Terri-Pryor Young,

Farm Bureau Insurance Company, and Rural Insurance Agency, Inc. and a separate motion (Dkt.

28) by defendant Fidelity National Property and Casualty Insurance Company[1] for leave to file

amended answers to add an affirmative defense that names Richard Schulte as a nonparty whose

fault caused or contributed to the plaintiff's injury for purposes of Indiana's Comparative Fault

Act.

### Allegations in the Plaintiff's Complaint

Michael Benbenek's complaint, filed May 3, 2012, alleges that each defendant was

involved in assisting him to obtain a flood insurance policy for a home he bought or in handling

claims he made against the policy.  Defendant Pryor-Young was Mr. Benbenek's longtime

insurance agent and held herself out as an agent of defendant Farm Bureau or, alternatively,

---

[1]     The court notes that Fidelity has not yet filed its reply brief, which is unnecessary in light
of the court's resolution of its motion.

defendant Rural Insurance Agency.  (Complaint, Dkt. ¶¶1, 8-9 and 77-78).  Agent Pryor-Young

placed the flood policy with Fidelity.  (Pryor-Young told Mr. Benbenek that Farm Bureau did

not write flood insurance policies).  (*Id.* ¶¶10-12).   Mr. Benbenek agreed to the policy and in

February 2003, he purchased the home believing that the flood policy's coverage of the "two

floors" of the home included the finished lower floor.  (*Id.* ¶¶13-14).   In September 2003, the

home flooded, with the primary damages suffered on the lower floor.  Fidelity covered nearly all

the losses from this flood.  (*Id.* ¶20).

In 2010, Mr. Benbenek learned, in conjunction with his investigation of the reason for a

massive increase in his flood insurance premium, that the Federal Emergency Management

Agency (FEMA) had in 2001 (before he bought his home) classified the area where his home

was located as an "AE" flood zone, a higher risk zone than the one the defendants had used when

they initially set the premium and sold the policy to the plaintiff.  (*Id.* ¶¶28-29).  The new flood

policy continued to state that it provided coverage for "two floors" of the plaintiff's home, and

Mr. Benbenek paid the new premium.   (*Id.* ¶34).

Mr. Benebeck later suffered flood damage to his home in February and June 2011, and he

made claims against the flood policy.  In adjusting the February 2011 claim, Fidelity determined

based on an engineer's study of the home that the lower floor was actually a basement for which

coverage was limited.  Most of the claim was denied on this basis.  (*Id.* ¶¶37-39).  Fidelity made

the same determination in adjusting the June 2011 flood claim, denying most of the claim.  (*Id.*

¶40).  Mr. Benbenek seeks damages based on his ownership of a home whose lower floor has

been rendered nearly useless and valueless because he cannot reasonably insure it.  (*Id.* ¶¶41-42).

The plaintiff's legal theories for relief include that Fidelity and Ms. Young each acted

negligently in its or her determination of, or failure to determine, the home's proper flood

coverage requirements and the cost for that coverage. The plaintiff alleges that Farm Bureau and Rural Insurance Agency are vicariously liable for Ms. Young's negligence.

## Defendants' Motions for Leave to Amend

Defendants Pryor-Young, Farm Bureau, and Rural Insurance jointly answered the complaint on June 29, 2012.  On September 4, 2012, they filed the present motion for leave to amend their answer to name Richard Schulte as a nonparty whose fault caused or contributed to the plaintiff's alleged injury and damages.  Mr. Schulte was the plaintiff's realtor and provided information to defendant Pryor-Young that she used in arranging insurance for the plaintiff.  Counsel for these defendants assert that counsel learned of Richard Schulte's status as a potential nonparty in the course of gathering information from Pryor-Young after she was sued and in preparing initial disclosures which were served on September 4, 2012.

Defendant Fidelity filed its answer on June 25, 2012, and an amended answer on August 1, 2012.  Its motion for leave to amend to name Mr. Schulte as a nonparty was filed October 3, 2012.  Fidelity suggests that it learned of Mr. Schulte's identity and his possible status as a nonparty when the other defendants served their initial disclosures and filed their motion for leave to amend on September 4, 2012.  Fidelity also notes that the plaintiff did not identify Mr. Schulte in his initial disclosures.

The plaintiff opposes the motions on the ground that the nonparty defense has not been timely raised by any of the defendants as required under Indiana's Comparative Fault Act, Ind. Code. ch. 34-51-2.

## Analysis

Under Indiana's Comparative Fault Act, the jury must assess the percentage of fault of each party and "nonparty" that caused or contributed to the plaintiff's injury or damages, and a

defendant is responsible for damages only to the extent of the percentage of fault attributed to it.

*See* Ind. Code §§ 34-51-2-8 and 34-51-2-11.  *See Owens-Corning Fiberglass Corp. v. Cobb*, 754

N.E.2d 905, 913 (Ind. 2001) (overall theme of the Comparative Fault Act is proportional

allocation of fault).  "Nonparty" is a term of art under the statute, and is a person a defendant

identifies in an affirmative defense of her answer as one who—though not named by the

plaintiff—caused the plaintiff's damages in full or in part.  Ind. Code § 34-51-2-14.  The Act

imposes time limits for raising a nonparty defense, as provided in Ind. Code § 34-51-2-16.

Section 16 states that a nonparty defense "known" by a defendant when she files her first answer

"shall be pleaded as part of the first answer."  If a defendant "gains actual knowledge" of a

nonparty defense after filing her first answer, she must plead the defense with "reasonable

promptness."  In cases where the defendant is served with the complaint and summons *more* than

150 days before the statute of limitations would expire on a claim by the plaintiff against the

nonparty, then the nonparty defense must be pleaded no later than 45 days before the limitations

period expires.  These time limits may be altered by the court where its decision is consistent

with "giving the defendant a reasonable opportunity to discover the existence of a nonparty

defense" and giving the plaintiff a reasonable opportunity to add the nonparty as a defendant

before his claim against the nonparty expires.  *See id.*[2]

---

[2]     The defendants contend that these time parameters for raising a nonparty defense are not binding in federal court under *Erie* principles. The court does not reach and resolve that issue because even if the court ignored the Comparative Fault Act provisions and relied only on the amendment principles under Fed. R. Civ. P. 15 and 16, its decision would be the same.  The court notes, however, that strong arguments could be made that the timing rules under the Comparative Fault Act are integral to the Act, are substantive and not merely procedural, and are therefore governing in federal court.  Decisions in this district court reflect the assumption that the deadlines in the Act for naming nonparties are applicable in federal court.  *See, e.g., Parker v. Rockies Express Pipeline, LLC,* 2012 WL 4481976 (S.D. Ind. Sept. 28, 2012); *Custer v. Schumacher Racing Corp.,* 2007 WL 2902047 (S.D. Ind. Aug. 14, 2007).

It appears from Mr. Benbenek's complaint that any negligence claims accrued in May or June 2010 when he learned he had been given and had relied on incorrect information regarding the flood insurance requirements for his home. His oppositions to the defendants' motions state his belief that the statute of limitations on any claim he might have against the realtor expired in May 2012. (Dkt. 26 at p. 2) (asserting a statute of limitations end date of May 10, 2012). *See* Ind. Code § 34-11-2-4 (statute of limitations for action for injury to person or personal property is two years).

Mr. Benbenek argues that defendant Pryor-Young (and thus Farm Bureau and Rural Insurance Agency because she is alleged to have been their agent) should have known that Mr. Schulte was a potential nonparty when the first answer was filed on June 29, 2012, and they were therefore required to raise the defense then. Mr. Benbenek, through counsel, sent a demand letter to Farm Bureau in December 2011 asserting Farm Bureau's liability because he allegedly had been given incorrect information regarding flood insurance requirements. Apparently this caused Ms. Pryor-Young to submit a notice of claim to her errors and omissions carrier on January 3, 2012, that explained her role with respect to the flood insurance, including that she had "gathered all the necessary information needed from Mr. Benbenek as well as his Realtor to provide [to the insurance company to] provide the Flood quote." (Dkt. 26-3). Mr. Benbenek argues that this document, as well as his counsel's letter demands to Farm Bureau, is evidence that Pryor-Young, Farm Bureau, and Rural Insurance Agency knew as early as January or February 2012 that the realtor "could potentially be involved in the dispute" or at least that their knowledge then should have triggered a duty to investigate further the realtor's identity and role, which would have led to their knowledge of Mr. Schulte as a potential nonparty. (*See* Dkt. 26 at pp. 3 and 4).

Regarding Fidelity, Mr. Benbenek does not point to anything that suggests Fidelity knew about Mr. Schulte or his potential status as a nonparty before filing its July 2012 answer.  He argues only that Fidelity could have uncovered information about Mr. Schulte had it more thoroughly investigated Mr. Benbenek's claims sooner.  (Dkt. 33 at p. 3).

The court is not convinced that a nonparty defense as to Mr. Schulte was known by any of the defendants at the time they filed their first answers.  The statute's language speaks of "actual knowledge," and not the type of inquiry knowledge argued by the plaintiff.  The statute also speaks of knowledge of a *nonparty defense*, and not merely knowledge that persons other than named defendants had roles in a transaction or event underlying a lawsuit.  This language suggests to the court that the Act contemplates a party's having the benefit of her lawyer's analysis about whether any particular person not included as a defendant may be at legal fault for the plaintiff's injuries or damages as described in the plaintiff's complaint.  According to Ms. Pryor-Young's counsel, its investigation—after the complaint was filed—led it to actual knowledge of the nonparty defense sometime in August 2012 after meeting with Ms. Pryor-Young and reviewing documents.  Fidelity suggests it gained actual knowledge in September 2012 when the other defendants served their initial disclosures and moved to amend their answer.

Because there is no showing that any of the defendants knew of the nonparty defense at the time of their first answers, the court next determines whether the defendants acted "reasonably promptly" to plead the defense later than their first answers.  The statute contemplates that a defendant should have "a reasonable opportunity to discover the existence of a nonparty defense."  Ind. Code § 34-51-2-16(1).

6

A defendant's diligence is measured from the time he is served with the complaint. *Kelly v. Bennett,* 792 N.E.2d 584, 587 (Ind. Ct. App. 2003). From that point forward, a defendant is expected to investigate and take steps, through discovery or otherwise, to determine the existence of a nonparty defense. *Id.* Thus, the defendant must act "reasonably promptly" from the date of service to raise the defense and it is not enough to act "reasonably promptly" from the date of discovering the defense to bring a motion to add a nonparty defense. *Id. See also Parker,* 2012 WL 4481976 at *2 (citing *Kelly,* 792 N.E.2d at 587, and *Custer,* 2007 WL 2902047 at *2) ("reasonable promptness" is measured within the time period between service of complaint and asserting the nonparty defense, and not the time period between learning of the defense and asserting it). Here, the defendants are seeking to assert the defense approximately four to five months after they were served with the complaint. It is thus early in the case, and their assertion of the defense at this stage of the proceedings likely will not affect case management deadlines.

The plaintiff argues that allowing the defense unfairly prejudices him because the statute of limitations has run on his claim against Mr. Schulte, and the court should not permit a nonparty defense later than the first answer when the statute of limitations has expired on the plaintiff's claim against the nonparty. Mr. Benbenek does not dispute, however, that the statute of limitations on a claim by him against Mr. Schulte had run *before* the defendants were required to file their first answers to the complaint. Nor does he dispute that the defendants properly could have named Mr. Schulte as a nonparty in their original answers even though *his* claim against Mr. Schulte was time-barred at that point. In these circumstances, the court's consideration of whether the defendants acted with reasonable promptness after their original answers cannot turn

on the fact that Mr. Benbenek can no longer bring a claim against the nonparty.  That would have been true even if the defendants had raised the defense at their first opportunity.[3]

The court finds that all defendants acted "reasonably promptly" to assert the nonparty defense.  They acted within four or five months of the commencement of this case, before the deadline under the case management order to amend pleadings, and before case management deadlines would be substantially affected.  Moreover, the timing of the defendants' assertion did not negatively affect Mr. Benbenek's ability to bring a claim against the nonparty, because it was time-barred before their original answers were due.  Finally, Mr. Benbenek remains free to advance arguments against any attribution of fault to Mr. Schulte, including, for example, the argument that nothing Mr. Schulte did or failed to do could excuse the defendants from their duties to exercise reasonable care to Mr. Benbenek.  (Dkt. 26 at pp. 5-6; Dkt. 33 at p. 4).  The court expresses no view on that matter, which will be determined, if necessary, on an appropriate record.  It is not, however, a basis upon which the court can find at this stage that amendment would be futile.

## Conclusion

For the foregoing reasons, the court GRANTS the defendants' motions (Dkt. 25 and 28) for leave to file amended answers to assert a nonparty defense naming Richard Schulte as a nonparty.

---

[3]    The statute provides a way normally to avoid this problem.  A plaintiff can file his complaint at least 150 days before the statute of limitations would run, in which case a defendant "shall plead any nonparty defense not later than 45 days before the expiration of that limitation." Ind. Code § 34-51-2-16.  Mr. Benbenek filed his complaint just days or a few weeks before the statute of limitations would run, which made him vulnerable to a nonparty defense identifying a person from whom he could not seek affirmative relief.  And Mr. Benbenek could have determined—before he filed suit—the role his realtor played in procuring the flood policy and could have named him as a defendant to the extent he had a viable claim.

The court directs the clerk to docket the amended answers at both Dkt. 25-1 and 28-1.

So ORDERED.


Date: _____10/29/2012_____

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana


Distribution:  All ECF-registered counsel of record