UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MICHAEL BENBENEK,                          )
     *Plaintiff*,                              )
                                                )
*vs.*                                      )      1:12-cv-00591-JMS-DML
                                                )
FIDELITY NATIONAL PROPERTY AND CASU-       )
ALTY INSURANCE COMPANY, TERRI PRYOR-       )
YOUNG, FARM BUREAU INSURANCE COMPA-        )
NY, and RURAL INSURANCE AGENCY, INC.,      )
     *Defendants*.                             )

## ORDER

Presently pending before the Court are: (1) a Motion for Summary Judgment filed by De-

fendants Farm Bureau Insurance Company ("Farm Bureau"), Rural Insurance Agency, Inc. ("Ru-

ral"), and Terri Pryor-Young, [dkt. 52]; and (2) Defendant Fidelity National Property and Casu-

alty Insurance Company's ("Fidelity") Motion for Summary Judgment, [dkt. 63].  The Court

held a hearing on Fidelity's motion on August 30, 2013.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to judg-

ment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes

clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must sup-

port the asserted fact by citing to particular parts of the record, including depositions, documents,

or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the

materials cited do not establish the absence or presence of a genuine dispute or that the adverse

party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affi-

davits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).  The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The Court finds the following to be the undisputed facts, supported by admissible evidence in the record:

**A.  The National Flood Insurance Program**

The United States Government established the National Flood Insurance Program (the "NFIP") through the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, *et seq.*) (the "NFIA").  [Dkt. 65-2 at 2, ¶ 3.]  The Federal Emergency Management Agency ("FEMA") runs the NFIP.  [*Id.*]  As such, FEMA wrote certain rules and regulations governing the NFIP (the "Arrangement").  [*Id.*; *see* 44 C.F.R. Pt. 62 App. A.]

Fidelity is a Write Your Own ("WYO") Program Carrier participating in the NFIP.  [Dkt. 65-2 at 2, ¶ 3.]  It is a signatory to the Arrangement, and all flood insurance policies issued by Fidelity are Standard Flood Insurance Policies ("SFIP") issued pursuant to the NFIA.  [*Id.*]  As a signatory to the Arrangement, Fidelity maintains a segregated account of Federal flood insurance funds as required by 44 C.F.R. Pt. 62 App. A, Article II(E).  [*Id.* at 2, ¶ 4.]  Fidelity also "issues and administers all SFIPs, and…investigates, adjusts, settles and defends all claims or losses arising from the SFIPs issued under the Arrangement."  [*Id.* at 2, ¶ 5.]  Further, "all flood claim payments by…Fidelity, are made directly with federal funds."  [*Id.*]  All loss payments under SFIPs – including "payments as a result of litigation that arises under the scope of the Arrangement" and judgments rendered against Fidelity as a WYO flood carrier – are paid from federal funds.  [*Id.* at 3, ¶¶ 6-7.]

**B.  Mr. Benbenek's Policy and the Floods**

*1.  Policy Issuance*

In 2003, real estate agent Richard Schulte assisted Mr. Benbenek with the purchase of a

house.  [Dkt. 54-2 at 4.][1]  Having looked at potential houses for over a year, Mr. Benbenek set-tled on a house located on Roland Drive in Indianapolis, Indiana.  [Dkt. 54-3 at 3.]  The house was located in a flood zone, so Mr. Benbenek's mortgage lender, GMAC Mortgage Company ("GMAC"), required him to purchase flood insurance.  [*Id.* at 5; dkt. 1 at 2, ¶¶ 5-6.]  Mr. Benbenek contacted Farm Bureau agent Terri Pryor-Young to obtain a quote for homeowners insurance and the flood insurance required by GMAC.  [Dkts. 54-3 at 6; 54-5 at 7.]  Ms. Pryor-Young informed Mr. Benbenek that Farm Bureau did not write flood insurance, but that she could obtain flood insurance for the house through another insurer.  [Dkt. 1 at 3, ¶ 10.]

Ms. Pryor-Young needed the "community number and the panel number" for the house and, since it was not reflected on the paperwork Mr. Benbenek had provided, she contacted Mr. Schulte.  [Dkt. 62-1 at 5.]  After obtaining that information, Ms. Pryor-Young would have plugged it into Standard Flood rating software that Fidelity used at that time.  [Dkt. 65-2 at 5, ¶ 22.]  The software allowed agents like Ms. Pryor-Young to fill in the property information, re-

---

[1] The Court notes that the parties cited to record evidence by using the title of the document (*e.g.*, Deposition of Richard Schulte at __), rather than the docket number (*e.g.*, dkt. 54-2 at __).  This method has made review of the parties' briefs unnecessarily cumbersome for the Court, especial-ly for Fidelity's briefs because Fidelity did not describe the document in its title when filing the exhibits on CM/ECF.  [*See, e.g.*, dkt. 65, with attachments at dkts. 65-1; 65-2; 65-3; and 65-4 which are merely titled "Exhibit 1," "Exhibit 2," etc.]  The parties are directed to the Court's Practices and Procedures, [dkt. 24], which provide that when electronically filing exhibits the parties "should not only number the exhibits, but should also add a descriptive identifier for the exhibits, *e.g.*, 'Exhibit 1 – Affidavit of John Smith'….," [*id.* at 3].  The Practices and Procedures also provide that, to the extent possible, exhibits should be filed as attachments to motions, so that the brief can then use the docket citation for the exhibit, and that "[d]oing so significantly facilitates review of the motion."  [*Id.*]

ceive a preliminary rating, and submit the quote. [*Id.*] Ms. Pryor-Young submitted a quote form, with the initial flood application, to Fidelity. [*Id.*][2]

Ms. Pryor-Young then received a quote, [dkts. 65-2 at 5, ¶ 21; 66-7], which she conveyed to Mr. Benbenek, [dkt. 62-1 at 6-7]. The quote was for a Preferred Risk Policy ("PRP") with $250,000 in building coverage and $60,000 in contents coverage for the house, for an annual premium of $326. [Dkt. 66-7.] The box for "Basement/Enclosure" was checked. [*Id.*]

Subsequently, Fidelity requested that Ms. Pryor-Young re-submit the application with a completed PRP application form, according to federal regulations. [Dkt. 65-2 at 5, ¶ 23.] On May 6, 2003, Ms. Pryor-Young submitted the PRP application to Fidelity, which reflected that the house was in flood zone "X." [*Id.* at 6, ¶ 25; 66-1 at 1.] At that same time, Fidelity contracted with Geotrac, a flood zone determination company, to certify the flood zone determination pursuant to federal regulations. [Dkt. 65-2 at 6, ¶ 24.] Geotrac rated the house in flood zone "X" and issued a flood determination certification to Fidelity. [*Id.*; dkt. 65-4.]

Based on Mr. Benbenek's applications, Fidelity issued Policy Number 137700518415 (the "Policy"), with a retroactive effective date of February 28, 2003. [Dkt. 65-1.] The declarations page of the Policy lists the basement of the house as "Finished," and states that the house is in flood zone "X." [*Id.*] Because the Policy is a SFIP, its full text is provided at 44 C.F.R. Pt. 61 App. A(1). Ms. Pryor-Young testified that she advised Mr. Benbenek when he purchased the Policy in 2003 that his premium could increase from the initial quoted amount and that, because "it's a program through FEMA…we have no control over the rates." [Dkt. 62-1 at 14-15.] Despite the designation of flood zone "X" on the declarations page, Mr. Benbenek's closing docu-

_____

[2] The quote was actually submitted to First Community Insurance Company, Fidelity's predecessor, and the parties also refer to Bankers Insurance Company, First Community Insurance Company's parent company. Because there is no issue regarding succession or whether the correct defendant has been named, the Court will refer to all three entities as "Fidelity."

ments included a Standard Flood Hazard Determination dated February 27, 2003, which listed the flood zone as "AE."  [Dkts. 66-3 at 18; 66-4 at 1.]  Additionally, a handwritten note on a Surveyor Location Report that Mr. Benbenek had as part of his closing documents stated "Surveyor says Flood Zone A."  [Dkt. 66-5 at 2.]   Fidelity issued declarations pages annually which denoted that the house had a basement.  [Dkt. 65-2 at 6, ¶ 27.]

In July 2003, Fidelity discovered that Mr. Benbenek did not qualify for a PRP under federal regulations due to the house's prior flood history.  [*Id.* at 6, ¶ 29.]  Accordingly, Fidelity raised the premium and changed the coverage to $39,000 in building coverage and $2,500 for contents coverage.  [Dkts. 1 at 4, ¶ 18; 54-3 at 10.]  Mr. Benbenek did not contact Fidelity regarding the increase, [dkt. 65-2 at 7, ¶ 29], but believes he contacted Ms. Pryor-Young who confirmed that additional insurance at an increased premium was needed to sustain his mortgage, [dkt. 62-2 at 12].  Ms. Pryor-Young testified that she contacted Rural – a company affiliated with Farm Bureau which placed certain types of policies, including flood insurance, that Farm Bureau did not place, [dkt. 62-1 at 3] – to determine why the premium had increased, and Rural advised that it was because the house had a history of flood claims and that this had not been discovered prior to providing the quote for the Policy because Rural only "pull[s] quotes every now and then," [*id.* at 9-10].  Mr. Benbenek paid the increased premium, and the new coverage took effect.  [Dkt. 65-2 at 7, ¶ 29.]

### 2. The 2003 Flood

In September 2003, Mr. Benbenek's house severely flooded.  [Dkt. 1 at 4, ¶ 20.]  He submitted a loss under the Policy, and the loss – which primarily affected the bottom floor of the house, or the basement – was almost entirely covered.  [*Id.*]  Shortly thereafter, Fidelity sent another declarations page which raised the annual premium again.  [*Id.* at 4, ¶ 21.]

### 3.  The 2010 Premium Increase

In May 2010, Fidelity received a notice of flood zone discrepancy which GMAC had sent to Mr. Benbenek.  [Dkts. 65-2 at 7, ¶ 30; 66-10.]  The notice stated that GMAC had been advised that the house was located in a Special Flood Hazard Area, and that Mr. Benbenek had forty-five days to provide GMAC with proof of flood coverage.  [Dkt. 66-10.]  In response, Fidelity contacted a flood zone determination company, Lereta, to perform a flood zone re-check.  [Dkt. 65-2 at 7, ¶ 31.]  Lereta provided a flood zone certification indicating that the house was located in an "AE" flood zone.  [*Id.*]  Based on the flood zone re-check, the premium for the Policy was increased to $3,132 annually.  [Dkt. 1 at 5, ¶ 27.]

Mr. Benbenek contacted Ms. Pryor-Young about the 2010 premium increase, and does not recall anything about their conversation except that she confirmed that he needed a different insurance policy to support his mortgage.  [Dkt. 62-2 at 13-14.]  Ms. Pryor-Young testified that Farm Bureau contacted Fidelity to see if it was possible to "grandfather" the Policy so that the same coverage could remain in place for the lower premium since Mr. Benbenek had had continuous coverage since 2003.  [Dkts. 62-1 at 18; 62-4 at 5.]  Ultimately, however, Fidelity required the increased premium to continue coverage.  [Dkt. 62-1 at 18.]

### 4.  The 2011 Floods

On February 28, 2011, Mr. Benbenek's house flooded.  [Dkt. 66-15 at 4.]  Fidelity retained U.S. Forensic, an engineering, inspection, and "failure analysis" firm, to investigate the effect of the flood on the house.  [*Id.* at 1.]  U.S. Forensic concluded that the lowest floor of the house was, in fact, a basement.  [*Id.* at 5-8.]  Mr. Benbenek received a declarations page each year the Policy was in effect, which listed the house as two floors with a finished basement.  [Dkt. 66-3 at 16.]  He does not dispute that U.S. Forensic determined that the lower level is in

- 7 -

fact a basement.  [*Id.* at 11.]  While Mr. Benbenek agrees that his lower level is 100% below grade and believes that neither Farm Bureau, Rural, nor Ms. Pryor-Young could have done anything to change the language of the Policy (which does not cover basements), he understood his lower floor to be fully insured without the "basement" limitation.  [Dkt. 72-1 at 10-11.]  Fidelity denied coverage for most of the damage from the February 2011 flood, based on U.S. Forensic's determination that the lowest level of the house was a basement for which coverage was excluded.  [Dkt. 1 at 6, ¶¶ 38-39.]  The house flooded again in June 2011, and Fidelity again denied coverage for the lowest level of the house because it was considered a basement.  [*Id.* at 7, ¶ 40.]  Mr. Benbenek did not submit proofs of loss for the full amount of his claimed loss in connection with either of the 2011 floods.  [Dkts. 65-2 at 4, ¶ 14; 66-3 at 17.]

### C.  The Lawsuit

On May 3, 2012, Mr. Benbenek filed the instant lawsuit alleging claims for: (1) a declaratory judgment against Fidelity that Fidelity agreed to cover flood damage caused to the house's bottom floor in full, [dkt. 1 at 7-8, ¶¶ 44-53]; (2) negligence against Fidelity related to Fidelity's representations as to "the cost, coverage, and proper flood zone" for the house because Mr. Benbenek "is now forced to pay roughly ten times the amount [Fidelity] initially contracted for, for significantly less insurance coverage, and will be forced to pay that amount for the remainder of his mortgage…to remain in his home," [*id.* at 8-9, ¶¶ 54-58]; (3) fraudulent misrepresentation against Defendants related to the Policy's premium and coverage, [*id.* at 9-10, ¶¶ 59-67; 13 at ¶¶ 92-97]; (4) breach of contract against Defendants, [*id.* at 10-11, ¶¶ 68-78]; and (5) negligence against Ms. Pryor-Young related to her role as Mr. Benbenek's insurance agent, [*id.* at 11-13, ¶¶ 79-91].

**III.**
**DISCUSSION OF FIDELITY'S MOTION FOR SUMMARY JUDGMENT**

At the outset, the Court finds it necessary to address the basis for its jurisdiction over Mr. Benbenek's claims against Fidelity.  On June 12, 2013, the Court issued an Order to Show Cause in which it stated that it agreed that it has subject-matter jurisdiction over claims against Fidelity related to Fidelity's handling of claims under the Policy.  [Dkt. 76 at 2 (citing *Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 680-81 (7th Cir. 2001)).]  The Court then required Fidelity to address whether the Court may exercise supplemental jurisdiction over Mr. Benbenek's claims related to procurement of the Policy in the first instance.  [*Id.*]

Fidelity responded with a thorough and helpful statement in which it argued that: (1) the Court has exclusive jurisdiction over all of Mr. Benbenek's claims, [dkt. 83 at 12-17]; (2) the Court has subject-matter jurisdiction over all of Mr. Benbenek's claims – including those related to the procurement of the Policy – under 28 U.S.C. § 1331, [*id.* at 17-20]; and (3) at the very least, the Court has supplemental jurisdiction over the procurement-related claims, [*id.* at 20-25].

The SFIP provides that: "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law."  44 C.F.R. Part 61 App. A(1).  The Court finds that Mr. Benbenek's claims for a declaration that the Policy provides coverage for the bottom floor of the house, and for breach of contract for failing to provide the coverage allegedly promised, are governed by federal law because they "relate directly to the application of the Policy terms and cover-age…[and] are governed by the NFIA, flood insurance regulations issued by FEMA, and federal common law."  *Dombrowski v. Adm'r, FEMA*, 2010 U.S. Dist. LEXIS 95827, *21 (N.D. Ind. 2010).  *See also Downey*, 266 F.3d at 680-81 (adopting position that "because the [NFIP] is a

- 9 -

federal program, uniform judicial interpretations of the standard insurance policies are neces-sary"); *Sodowski v. Nat'l Flood Ins. Program of Federal Emergency Mgmt. Agency*, 834 F.2d 653, 655 (7th Cir. 1987) ("Federal common law controls the  interpretation of insurance policies issued pursuant to the [NFIP]").  Accordingly, the Court has federal question jurisdiction over those claims.

The Court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or con-troversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The Court finds that Mr. Benbenek's claims against Fidelity for negligence and fraudulent misrepresenta-tion in the procurement of the Policy are so related to the claims handling claims for which the Court has original jurisdiction, that they form part of the same case or controversy such that ex-ercising supplemental jurisdiction over them is appropriate.  Because the Court finds that it has supplemental jurisdiction over the procurement related state law claims, it need not decide whether it also has either exclusive original jurisdiction or federal question jurisdiction over those claims.

Having concluded that it has jurisdiction over all of Mr. Benbenek's claims against Fidel-ity, the Court will address the merits of Fidelity's Motion for Summary Judgment.  In its motion, Fidelity argues that: (1) Mr. Benbenek's state law claims, except for his breach of contract claim, are preempted because federal common law governs the interpretation of SFIPs, [dkt. 64 at 9-13, 15-27]; (2) his claims are precluded because he did not familiarize himself with the Policy, [*id.* at 13-15]; (3) his breach of contract claim fails because he did not submit a valid proof of loss, [*id.* at 27-29]; (4) his fraudulent misrepresentation claim fails, even if it is not preempted, because it is barred by the statute of limitations, [*id.* at 29-31]; and (5) Mr. Benbenek has failed to present

evidence that Fidelity made any material false misrepresentations with knowledge or reckless ignorance of their falsity, [*id.* at 31-35].

On the issue of preemption, Fidelity has invited the Court to weigh in on whether some or all of Mr. Benbenek's claims may be preempted by federal law, urging that the Court's ruling on its Motion for Summary Judgment "will come at a time of great significance for the [NFIP]…[because] [o]ver the next several months, the Program expects to see the filing of hundreds (if not several thousand) NFIP related lawsuits throughout the northeast as a result of what is called 'Superstorm Sandy' that occurred in 2012." [Dkt. 85 at 1-2.] In considering the preemption issue, the Court was required to examine the nature of the claims being raised. As discussed below, the undisputed facts establish that Mr. Benbenek's claims suffer from four key defects – the SFIP does not provide coverage for basements; the SFIP provides that premiums may increase; Mr. Benbenek did not submit a proof of loss with respect to the 2011 damage to his basement; and his claims are based solely on the information on the declarations page, which constitute representations made by him to Fidelity and not the other way around. To weigh in on the preemption issue where the undisputed facts so undermine Mr. Benbenek's state law claims would be a gratuitous holding. This is especially true in light of the complexity of the preemption issue and the fact that the Seventh Circuit Court of Appeals has not yet had occasion to consider preemption within all relevant contexts. Accordingly, the Court declines Fidelity's invitation to opine on the preemption issue, and will address Fidelity's merits-based arguments instead.

## A. Declaratory Judgment Claim

Mr. Benbenek requests a declaratory judgment that Fidelity "agreed to cover flood damage caused to [the] bottom floor [of the house] in full." [Dkt. 1 at 8, ¶ 53.] His claim suffers

from a fatal flaw, however.  The Policy – as a SFIP – could only provide the coverage afforded by regulation, and that coverage simply does not extend to basements.  *See, e.g., Da Cunha v. Standard Fire Ins. Company/Aetna Flood Ins. Program*, 129 F.3d 581, 587 (11th Cir. 1997) ("Regardless, nowhere does the policy state that the ground floor is fully covered at whatever elevation.  On the contrary, the policy states that coverage is limited to that allowed by federal regulation…").

In sum, the Court is powerless to alter the terms of the SFIP, which undisputedly does not provide coverage for basements.  To the extent that Mr. Benbenek bases his request for a declaratory judgment on allegations that Fidelity somehow promised that the Policy would cover the basement, or that its payment of Policy proceeds for the 2003 Flood preclude it from denying coverage for the 2011 Floods, the Court will discuss both arguments below in connection with Mr. Benbenek's negligence and fraud claims.  Neither provides a basis for re-writing the Policy's coverage, however, which is what Mr. Benbenek asks the Court to do.  The Court cannot, and his declaratory judgment claim fails as a matter of law.

### B.  Breach of Contract Claim

The basis of Mr. Benbenek's breach of contract claim, though somewhat unclear from his Complaint, is that Fidelity breached the terms of the Policy by increasing his premium and by failing to provide coverage for the lower floor of the house.  [Dkts. 1 at 10-11, ¶¶ 68-78; 72 at 29.]

#### 1.  Premium Increases

As to the premium increases, Mr. Benbenek argues that Fidelity breached the Policy when it "altered [its] terms."  [Dkt. 72 at 29.]  Similar to basement coverage, however, Mr. Benbenek cannot escape the terms of the SFIP, which specifically provides that the premium can

increase – even within the one-year term of each Policy period.  *See* 44 C.F.R. Pt. 61 App. A(1) VII(G).  To allow Mr. Benbenek to recover from Fidelity for premium increases would be to disregard the clear language of the SFIP, which expressly allows such increases.  The premium increases complied with the terms of SFIP, and a breach of contract claim based on the increases fails as a matter of law.

### 2. *Failure to Pay for Basement Damage From 2011 Floods*

In response to Mr. Benbenek's claim that Fidelity breached the Policy by failing to provide coverage for the basement in connection with the 2011 Floods, Fidelity argues that Mr. Benbenek did not comply with SFIP Article VII(J) because "he did not submit a valid proof of loss that was sworn to and signed by himself within the deadline imposed by the SFIP." [Dkt. 64 at 27.]  This, Fidelity argues, is fatal to Mr. Benbenek's breach of contract claim based on basement coverage for the 2011 Floods.  Mr. Benbenek does not directly address whether he submitted a valid proof of loss, but instead argues that "the majority of [his] claims are not the result of a direct flood loss to the property," but rather relate to Fidelity's denial of coverage for the basement in 2011 after covering the basement in 2003, and so the claims are not made "under the policy" and the requirements of SFIP Article VII(J) do not apply.  [Dkt. 72 at 29.]  Fidelity replies that Mr. Benbenek's house was rated with a basement from the inception of the Policy, Fidelity's mistaken payment of Policy proceeds in 2003 does not affect its coverage decision in 2011, and the declarations pages all listed the house as having a basement.  [Dkt. 74 at 14-16.]

Article VII(J)4 of the SFIP provides: "In case of a flood loss to insured property, you must:…[w]ithin 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with [certain information, including date and time of loss, explanation of how the loss happened,

- 13 -

and other details]." 44 C.F.R. Pt. 61 App. A(1). In interpreting this provision of the SFIP, courts across the country have strictly enforced the proof of loss requirement. *See, e.g., Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 176 (2d Cir. 2012) ("In the context of federal insurance policies, the Supreme Court has long held that an insured must comply strictly with the terms and conditions of such policies"); *Miller v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 2010 U.S. Dist. LEXIS 70355, *9 (S.D. Ind. 2010) (insured "failed to perform his obligations (such as submitting the [proof of loss]) under the SFIP to be entitled to recover"); *Marseilles Homeowners Condo. Ass'n v. Fid. Nat'l Ins. Co.*, 542 F.3d 1053, 1055 (5th Cir. 2008) (submission of sworn proof of loss is "a condition precedent" to suing under the policy); *Evanoff v. Std. Fire Ins. Co.*, 34 F.3d 516, 521 (6th Cir. 2008) ("federal courts have consistently held that the proof of loss requirement is to be strictly enforced") (citation omitted); *Bullard v. Connor*, 716 F.Supp. 1081, 1084 (N.D. Ill. 1989) (granting summary judgment in favor of insurer where insured failed to file proof of loss and stating "Courts have consistently denied recovery when claimants fail to comply with proof of loss requirements found in their insurance policies issued under federal programs").

The Court rejects Mr. Benbenek's attempt to circumvent Article VII(J) by arguing that his true claim arises from the fact that Fidelity paid a claim for the basement in 2003 then denied the 2011 claims. This characterization is a distinction without a difference. Mr. Benbenek seeks coverage under the Policy for flood loss and, as such, must comply with the Policy's conditions precedent, including the requirement that he file adequate proofs of loss. This he did not do. Additionally, the Court finds any type of estoppel claim based on Fidelity's 2003 payment of a basement claim unavailing. Fidelity cannot alter the terms of the SFIP, and the fact that it may have mistakenly provided coverage for the basement in 2003 is irrelevant to whether it properly

denied coverage in 2011. *See, e.g., Bruinsma v. State Farm Fire & Cas. Co.*, 410 F.Supp.2d 628, 635 (W.D. Mich. 2006) (Since the Supreme Court's holding in *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990), "no federal court has ever upheld a claim of equitable estoppel by an insured seeking an award of public funds under a [SFIP]"); *Treasure Bay Gaming & Resorts, Inc. v. Omaha Prop. & Cas. Co.*, 2002 U.S. Dist. LEXIS 28158, *13 (S.D. Miss. 2002) ("The plaintiffs may not utilize a claim of estoppel against either the government or the WYO carrier if coverage is denied under a SFIP when SFIP requirements are not met").

Here, it is undisputed that Mr. Benbenek did not submit sworn proofs of loss for the amounts he sought for the damage caused to the basement by the 2011 Floods. In his response, Mr. Benbenek did not dispute Fidelity's argument that he did not do so. And, indeed, at the August 30, 2013 hearing on Fidelity's Motion for Summary Judgment, Mr. Benbenek's counsel advised that Mr. Benbenek does not dispute that the only proofs of loss Mr. Benbenek submitted were for the amounts of loss he was told were covered – and not for the loss relating to the basement. Absent adequate and timely proofs of loss, Mr. Benbenek's breach of contract claim for the 2011 flood damage to the basement fails as a matter of law.

### C.  Negligence and Fraud Claims

Mr. Benbenek's negligence claim is based on Fidelity's alleged representations as to "the cost, coverage, and proper flood zone" and the assertion that Mr. Benbenek "is now forced to pay roughly ten times the amount [Fidelity] initially contracted for, for significantly less insurance coverage, and will be forced to pay that amount for the remainder of his mortgage…to remain in his home." [Dkt. 1 at 8-9, ¶¶ 54-58.] His fraud claims are based on the Policy's declarations page, which he alleges stated that "coverage would be provided for 'Two Floors' at an annual rate of $326.00 based on its determination of the Home being located in Risk Zone 'X.'"

[*Id.* at 9, ¶ 61.]  Mr. Benbenek's counsel clarified at the August 30, 2013 hearing that Mr. Benbenek is alleging misrepresentations by Fidelity only through the statements on the declarations page.  Because Mr. Benbenek's negligence and fraud claims are based on the same alleged misrepresentations – regarding the Policy's premium and coverage for the bottom floor of the house, and on the flood zone – the Court will address the negligence and fraud claims together.

To prevail on a negligence claim, "a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach."  *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004) (*citing Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999)).  "[A] defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim."  *Haire v. Parker*, 957 N.E.2d 190, 195 (Ind. Ct. App. 2011) (*citing Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004)).

In Indiana, the elements of fraudulent misrepresentation are that: "(1) the defendant made false statements of past or existing material fact; (2) the defendant made the statements knowing them to be false or made them…recklessly without knowledge of their truth or falsity; (3) the defendant made the statements to induce the plaintiff to act upon them; (4) the plaintiff justifiably relied and acted upon the statements; and (5) the plaintiff sustained damages as a proximate result."  *Smith v. State Farm Fire & Cas. Ins. Co.*, 2012 U.S. Dist. LEXIS 157400, *7 (N.D. Ind. 2012) (*citing Haire v. State Farm Fire & Cas. Co.*, 2011 U.S. Dist. LEXIS 116376, *6-7 (N.D. Ind. 2011)).  Under Indiana law, a fraud claim "cannot be based on a misrepresentation of law or on a promise to be performed in the future."  *Smith*, 2012 U.S. Dist. LEXIS 157400 at *7-8.  The elements of constructive fraud are: (1) a duty that the defendant owes to the plaintiff by virtue of their relationship; (2) violation of that duty through "the making of deceptive material misrepre-

sentations of past or existing facts or remaining silent when a duty to speak exists"; (3) reliance

by the plaintiff; (4) injury to the plaintiff as a proximate result thereof; and (5) the gaining of an

advantage by the defendant at the plaintiff's expense. *Rice v. Strunk*, 670 N.E.2d 1280, 1284

(Ind. 1996).

### 1. *Premium Increases*

Mr. Benbenek's first theory in connection with his negligence and fraud claims is that Fi-

delity misrepresented that the Policy would cost $326 per year, when in reality the premium has

increased ten-fold over the last several years. [*See* dkt. 1 at 9, ¶ 58 (alleging in negligence count

that "Fidelity's false representation as to the cost…[of the Policy] caused Plaintiff to improperly

value the Home, and as a result of Defendant's breach, Plaintiff is now forced to pay roughly ten

times the amount Defendant initially contracted for…and will be forced to pay that amount for

the remainder of his mortgage…to remain in his home"); 9-10 at ¶¶ 61, 66 (in connection with

fraudulent misrepresentation claim, alleging that "Defendants made a material misrepresentation

of fact on its Declarations Page stating that coverage would be provided…at an annual rate of

$326.00…," and that "Defendants gained an advantage at Plaintiffs['] expense in that Plaintiff is

now forced to pay yearly premiums…for roughly ten times the amount represented by Defend-

ants for less coverage").]

As to the premium increases, Fidelity argues that: (1) any fraud claim based on the pre-

mium quote – and the assertion that the quote was a representation about future premiums – fails

because it would be a representation about future conduct, which cannot support a fraud claim

under Indiana law, [dkt. 64 at 34-35]; and (2) Mr. Benbenek has not submitted any evidence

supporting his assertion that "the total cost of his home would have been outside of his price

range if he had known that the annual premium 'would have been ten times the amount he was quoted,'" [dkt. 74 at 19-20].

As discussed above in connection with the breach of contract claim, the SFIP specifically provides that premiums may increase. Even if that were not true, the fatal flaw in Mr. Benbenek's negligence and fraud claims based on the premium increases is that he has not presented any evidence that Fidelity ever represented that the premium would remain at $326 forever, or even for the first year after the Policy took effect. Indeed, Mr. Benbenek's counsel confirmed at the August 30, 2013 hearing that Ms. Pryor-Young specifically told Mr. Benbenek when he purchased the Policy that the premiums could increase, and that the Policy itself says the premium can increase – even within the one-year term of each Policy period. Without some evidence that Fidelity represented that the premium would not increase, coupled with evidence that he relied on that representation in purchasing the house, Mr. Benbenek's negligence and fraud claims based on the premium increases fail as a matter of law.

### 2. *Basement Coverage*

Mr. Benbenek alleges that Fidelity made misrepresentations relating to the Policy's coverage, specifically that the Policy provided coverage for "two floors," which would include the bottom floor of the house. [*See* dkt. 1 at 9, ¶¶ 57-58 (in negligence claim, alleging that "Plaintiff relied upon the documentation provided by Defendant Fidelity in…obtaining the requisite flood coverage of the entire Home," and "Fidelity's false representation as to the…coverage…caused Plaintiff to improperly value the Home [and he] is now forced to pay roughly ten times the amount Defendant initially contracted for, for significantly less coverage"); ¶ 61 (for fraud claim, alleging that "Defendants made a material misrepresentation of fact on its Declaration Page stating that coverage would be provided for 'Two Floors'").]

There is a fundamental problem with Mr. Benbenek's emphasis on the declarations page: In this specialized area of flood insurance, statements on the declarations page are considered representations by the insured, not the insurer, and are merely "a computer generated summary of information furnished by" the insured.  44 C.F.R. Pt. 61 App. A(1).  Mr. Benbenek's sole reliance on the statements on the declarations page is therefore fatal to his negligence and fraud claims based on coverage for the bottom floor of the house.  *See, e.g., Da Cunha*, 129 F.3d at 587 ("The references in the declaration pages to a 'non-elevated' home or one with 'three or more floors with no basement' cannot be construed as a promise that the ground floors of the townhouses were fully covered under the policy.  The policy defines the declarations page as 'a computer generated summary of information furnished by you [the insured] in the application for insurance,' although appellants claim that the insurers or their agents provided the terms in the declarations page").  And, in any event, Mr. Benbenek conceded at the August 30, 2013 hearing, through his counsel, that even if the declarations page said "two floors," the box for "basement" was also checked.

And again, the Policy – as a SFIP – could only provide the coverage afforded by regulation, and that coverage does not extend to basements.  *See, e.g., McGair v. Am. Bankers Ins. Co.*, 693 F.3d 94, 101 (1st Cir. 2012) ("Even if we acknowledged that their Declarations Page creates an ambiguity as to the scope of coverage, which we do not, general insurance law principles applicable to the interpretation of ambiguities must give way in light of the prescription by federal regulation of the terms of the SFIP.  Because [the insurer] had no authority to alter the terms of the SFIP through the Declarations Page, there is no need to resolve any supposed inconsistency between the SFIP and Declarations Page.  The terms of the SFIP control").  It is undisputed that the SFIP does not provide coverage for basements, and Mr. Benbenek's counsel confirmed at the

hearing that Mr. Benbenek has not presented any evidence to counter Fidelity's determination that the bottom floor of the house is in fact a basement.  Accordingly, his negligence and fraud claims relating to the bottom floor coverage fail.

### 3.  *Flood Zone*

The final basis for Mr. Benbenek's negligence and fraud claims is his assertion that Fidelity mistakenly determined that his home was in flood zone "X" when it was actually located in the more expensive flood zone "AE."  [*See* dkt. 1 at 9, ¶ 58 (in connection with negligence claim, alleging that "Fidelity's false representation as to the…proper flood zone caused Plaintiff to improperly value the Home"); ¶¶ 61-62 (for fraud claim, alleging that "Defendants made a material misrepresentation of fact on its Declarations Page stating that coverage would be provided…based on its determination of the Home being located in Risk Zone "X," and "[a]t the time Defendant Fidelity determined the flood zone, it had the requisite correct information to properly assess the flood risk and it failed to do so").]

Again, the statement on the initial declarations page that the house was in flood zone "X" is not only considered a statement by Mr. Benbenek under flood insurance regulations, it actually was.  *See TAF, L.L.C. v. Hartford Fire Ins. Co.*, 549 F.Supp.2d 1282, 1289-90 (D. Col. 2008) (noting that the SFIP provides that the declarations page is a computer-generated summary of information provided by the insured in the policy application and that insurer had no duty to verify the accuracy of that information, and stating that insured "has failed to provide any law or facts in support of a duty owed by [the insurer] to [the insured] related to the 'procurement' of the policy via the issuance of the declarations page").  As counsel for Fidelity explained at the August 30 hearing, and Mr. Benbenek does not dispute, Mr. Benbenek and Ms. Pryor-Young plugged the information regarding the house into rating software, then submitted the software

- 20 -

results – which included the flood zone determination – to Fidelity. The declarations page reflected that information, without any input whatsoever from Fidelity. Additionally, Mr. Benbenek has not presented any evidence that Fidelity knew the flood zone determination was wrong, or that Fidelity was somehow negligent with respect to that determination. In fact, the evidence indicates that Mr. Benbenek, and not Fidelity, had documents prior to the closing on his house which reflected a discrepancy in the flood zone determination. [*See* dkts. 66-3 at 18; 66-4 at 1 (Standard Flood Hazard Determination form listing flood zone as "AE"); 66-5 at 2 (note on Surveyor Location Report stating "Surveyor says Flood Zone A").] Mr. Benbenek's counsel confirmed at the hearing that Mr. Benbenek possessed those documents and, significantly, that Fidelity did not.

Because Mr. Benbenek relies solely on the declarations page to support his flood-zone-related allegations, and since the statements on the declarations page are considered and were statements by him, those allegations cannot support his negligence and fraud claims. Further, the evidence establishes that Mr. Benbenek was aware of the flood zone discrepancy that existed when the declarations page was initially issued, and that Fidelity was not.

In sum, Mr. Benbenek's negligence and fraud claims based on each of his three theories fail as a matter of law.[3] The NFIP is a highly regulated program, which leaves no room for Fidelity or the Court to change the terms of the Policy. While it is unfortunate that the Policy did not provide the coverage Mr. Benbenek may have thought it would, the terms of the SFIP are clear and, based on the evidence presented, the Court finds that Fidelity did not act negligently or fraudulently.

---

[3] The Court need not, and will not, address Fidelity's statute of limitations arguments since it has concluded that the negligence and fraud claims fail on the merits.

## IV.
### DISCUSSION OF FARM BUREAU'S, RURAL'S, AND MS. PRYOR-YOUNG'S MOTION FOR SUMMARY JUDGMENT

Farm Bureau, Rural, and Ms. Pryor-Young (the "Agency Defendants") have moved for summary judgment on Mr. Benbenek's claims against them, which are state law claims for fraudulent misrepresentation, breach of contract, and negligence.  As discussed above, the Court is granting summary judgment in favor of Fidelity on the breach of contract and declaratory judgment claims, which are the only claims for which the Court has found that it had original jurisdiction.  *See* 44 C.F.R. Part 61 App. A(1).  Accordingly, where (as here) all federal questions are resolved before trial, the Court must determine whether it can retain jurisdiction over the state-law claims asserted against the Agency Defendants.  *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits….There are, however, unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness and comity – will point to federal decision of the state-law-claims on the merits").

Here, the Court will consider whether it should exercise supplemental jurisdiction over the claims against the Agency Defendants.[4]  As discussed above in connection with the state law claims against Fidelity, this Court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider

---

[4] Neither Mr. Benbenek nor the Agency Defendants have asserted that diversity jurisdiction exists.

and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).   It is well-established that the usual practice is to dismiss or remand the state supplemental claims without prejudice. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

The Court concludes that the factors it must consider weigh in favor of relinquishing jurisdiction over the claims against the Agency Defendants to a state court.  Although the dispute between Mr. Benbenek and the Agency Defendants does relate to the Policy, its resolution requires a factually intensive analysis of the interactions between those parties.  While the Court is familiar with the facts underlying Mr. Benbenek's dealings with Fidelity, it is not as familiar with those relating to his interactions with the Agency Defendants.  Judicial economy does not weigh against letting a state court delve into those matters in order to resolve the Agency Defendants' Motion for Summary Judgment.  Furthermore, comity favors allowing the state court to resolve Mr. Benbenek's state law claims.  Finally, the Court is not aware of any fairness or convenience concerns that militate toward retaining jurisdiction over the state law claims.  Although the parties have fully briefed the Agency Defendants' Motion for Summary Judgment, their efforts will not be wasted.  The motion and briefs can be filed with the state court for its consideration, should Mr. Benbenek choose to pursue his claims against the Agency Defendants there.  For these reasons, now that the federal claims against Fidelity have been dismissed, the Court in its discretion declines to continue exercising supplemental jurisdiction over Mr. Benbenek's exclusively state law claims against the Agency Defendants.  *See* 28 U.S.C. § 1367(c)(3); *Groce*, 193 F.3d at 501.

- 23 -

# V.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Fidelity's Motion for Summary Judgment, [dkt. 63], and relinquishes supplemental jurisdiction over Mr. Benbenek's claims against the Agency Defendants.  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** those claims so that Mr. Benbenek can pursue them in state court.  Judgment will enter accordingly.

Further, the Court **DENIES AS MOOT** the Agency Defendants' Motion for Summary Judgment, [dkt. 52], Fidelity's Motion to Strike, [dkt. 99], to which the Agency Defendants had joined, and Fidelity's Motion to Quash Jury Demand, [dkt. 102].

09/24/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

James H. Austen
STARR AUSTEN MYERS & MILLER, LLP
austen@starrausten.com

John F. Donaldson
MERCHO LEGAL SERVICES, LLC
jdonaldson@mercholegal.com

Gerald Joseph Nielsen
NIELSEN CARTER & TREAS, LLC
gjnielsen@nct-law.com

Katherine L. Shelby
BINGHAM GREENEBAUM DOLL LLP
kshelby@bgdlegal.com

Shannon G. Starr
STARR AUSTEN & MILLER, LLP
shannon@starrausten.com

William T. Treas
NIELSEN LAW FIRM, L.L.C.
wtreas@nct-law.com

Jason M. Verdigets
NIELSEN LAW FIRM, L.L.C.
jverdigets@nct-law.com